UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 02/11/2015

THOMAS WILLIAMS,

                Plaintiff,

-against-

RHONDINA WILLIAMS and
KELLY KEANE,

                Defendants.

13-CV-3154 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Thomas Williams, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against Defendants Kelly Keane and Dr. Rhondina Williams, both of whom work at the medical clinic at Sing Sing Correctional Facility, where Plaintiff was incarcerated at all times relevant to this case. Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they were deliberately indifferent to his serious medical needs by delaying treatment of his broken finger. Plaintiff filed an amended complaint on March 7, 2014.[1] (Dkt. 51.) Defendants each moved to dismiss the amended complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim on which relief may be granted or, alternatively, based on the doctrine of qualified immunity. (Dkt. 59 and 61.) For the reasons that follow, the Court finds that Plaintiff has failed to state a claim on which relief may be granted and, accordingly, Defendants' motions are GRANTED.

---

[1] Although Plaintiff named Matt Keane as a defendant in his original complaint, this individual was never served and Plaintiff removed him as a defendant in his amended complaint.

1

## I.   BACKGROUND

For purposes of this motion, the Court accepts as true all facts alleged by Plaintiff.  See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).  In determining whether Plaintiff states a claim on which relief may be granted, the Court considers facts alleged in his amended complaint, his opposition to Defendants' motions to dismiss, and the medical records attached to his opposition.[2]

As noted above, Plaintiff was incarcerated at Sing Sing at all times relevant to his complaint.  He alleges that on May 20, 2010, while he was in the clinic awaiting a physical therapy appointment for his spinal problems, he suffered "serious pains throughout his back and neck" that caused him to fall against the wall.  (Am. Compl. at 5 ¶ 2.)[3]  Plaintiff injured the middle finger on his left hand when he tried to break his fall.  (Id.)  He signed up for sick hall to address, among other concerns, his "left-hand middle finger that swelled up and the bone was poking up under the skin and causing [him] serious pain."  (Id. ¶ 5.)  Although Plaintiff attended morning sick hall the next day, he began to experience "intense" pain and dizziness while he waited to see a nurse and had to return to his cell because he was "unable to sit or stand anymore."  (Id. ¶ 7.)  Plaintiff returned to emergency sick hall that afternoon after a correctional officer saw him in pain in his cell and signed him up.  (Id. at 6 ¶ 9.)

---

[2] Generally, "[c]ourts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 122–23 (S.D.N.Y. Jan. 26, 2010) (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)).  Nevertheless, "the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where … those allegations are consistent with the complaint." Rodriguez v. McGinnis, 1 F. Supp. 2d 244, 246–47 (S.D.N.Y. 1998) (collecting cases); see also Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that although a court should generally refrain from considering matters outside the pleadings when reviewing a 12(b)(6) motion to dismiss, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion").

[3] For ease of reference and consistency, any citations to specific pages of the Amended Complaint and Plaintiff's Memorandum of Law in Opposition reflect page number designations made by the Court's Electronic Case Filing system.

Nurse Keane saw Plaintiff in the medical clinic that afternoon—Friday, May 21, 2010. He alleges that Nurse Keane was "verbally rude" to him, stating that "she just saw [him] the other day. She can't do anything for [him], [and that] she'll put [him] down to see [his medical provider]." (Id. ¶ 11.) She then ordered him to leave the clinic. (Id.) Plaintiff alleges that Nurse Keane refused to look at his finger despite his efforts to show her and that she did not note any of his concerns in his medical records. (Id. ¶ 13.) There is no record of this visit in the medical records that Plaintiff submitted, which appear to cover his clinic visits and physical therapy sessions between April 29, 2010 and October 21, 2010. (Pl. Opp'n, Exh. A at 17–27.) According to Plaintiff, Nurse Keane "lied about putting [him] in to see [his] medical provider" and never actually made such a referral. (Id. at 50, 52.) Although Plaintiff saw a doctor the following business day, he contends that "[t]his appointment was not 'triggered' by any actions on behalf of Nurse Keane. There is no medical report of referral in Plaintiff's medical records reflecting [that] [N]urse Keane ever [saw] plaintiff on May 21, 2010, or scheduled plaintiff to see Dr. Williams on May 24, 2010." (Id. at 49.) In his May 21 Inmate Grievance Complaint filed against Nurse Keane, Plaintiff alleges that "at this time, I was in serious pain with [the] wrong low dosage of pain medication of 50 m.g. when I [was] suppose[d] to have 100 m.g. twice a day." (Am. Compl. at 12.) Plaintiff asserts that he returned to his cell in "serious pain" earlier that day, after Nurse Keane intentionally denied him any medical attention or pain medication. (Id. at 6 ¶ 15.)

Plaintiff was seen by Dr. Williams in the medical clinic on Monday, May 24, at which time he informed her of his finger injury, the serious pain that he was in, and the "swelling and bone sticking up under the skin of [the] finger." (Id. at 7 ¶ 18.) Dr. Williams asked whether he could move his finger, to which he responded, "a little." (Id. ¶ 19.) She then visually inspected his hand and told him that "there was nothing wrong with [his] finger." (Id.) Plaintiff alleges that Dr.

3

Williams did not provide him with any medical treatment, including X-rays or pain medication, for his finger on that day. (Id. ¶ 20.)

Plaintiff saw Dr. Williams again 21 days later, on June 14, and informed her that he continued to experience serious pain and injury to his finger. (Id. ¶¶ 21–22.) She conducted a "hands on examination" of his finger and ordered an X-ray of his left hand, which was conducted two days later. (Id. ¶ 23.) On June 21, Dr. Williams informed him that the X-ray revealed that his finger was broken and placed a splint on his finger. (Id. at 7–8 ¶¶ 25–27.) She also referred Plaintiff to physical therapy for his finger, which he attended from August 30 through October 21. (Id. at 8 ¶¶ 28–29.) A report from an X-ray conducted on July 14 indicates that Plaintiff's finger was 70 percent healed after the splint was applied (Pl. Opp'n, Exh. A at 21), and his physical therapy records indicate that his finger was healed upon his discharge on October 21 (id., Exh. B at 38–39). He alleges that Dr. Williams' intentional failure to order an X-ray on May 24 and to increase his pain medication contributed to the serious pain in his finger. (Am. Compl. at 8 ¶ 30.)

Plaintiff alleges that Defendants intentionally deprived him of medical care to treat his broken finger and the resulting pain, and that this deprivation constitutes a deliberate indifference to his serious medical need in violation of the Eighth Amendment. (Id. at 3.) Plaintiff alleges that he experiences "present pain and suffering and loss of full strength in [his] left hand." (Id. at 3.) He is seeking compensatory and punitive damages in the amount of $500,000. (Id. at 9.)

## II.   STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." Thompson v. Carter,

4

284 F.3d 411, 416 (2d Cir. 2002) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Where the plaintiff is *pro se*, his complaint "must be construed liberally with special solicitude and interpreted to raise the strongest claims that it suggests. Nonetheless, a *pro se* complaint must state a plausible claim for relief." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotation marks and citation omitted). A pleading, whether *pro se* or not, that offers "labels and conclusions" or only provides "naked assertion[s]" devoid of "further factual enhancement" is insufficient to state a claim. Twombly, 550 U.S. at 555, 557.

### III.   DISCUSSION

#### A. Legal Standards Governing Eighth Amendment Claims of Deliberate Indifference to Serious Medical Needs

The Cruel and Unusual Punishment Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates "receive adequate … medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Significantly, however, "not every lapse in medical care is a constitutional wrong." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). Rather, Plaintiff must show a "deliberate indifference to [his] serious medical needs," Estelle v. Gamble, 429 U.S. 97, 104 (1976), which is understood as "the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Id. (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). A prison official only violates the Eighth Amendment when both the objective and subjective prongs of the test enunciated in Farmer are met. Specifically, a prisoner must allege both that (1) he suffered an

5

"objectively, 'sufficiently serious'" deprivation of medical care and (2) the official who caused the harm acted or failed to act with "a sufficiently culpable state of mind," that is, with "deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834.

To determine whether an alleged deprivation is "sufficiently serious" under the objective prong, the Court is required "to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin, 467 F.3d at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)). The inquiry "must be tailored to the specific circumstances of each case." Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003); see also Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) (offering a non-exhaustive list of factors that assist in determining whether a serious medical condition exists). Generally, however, a deprivation is sufficiently serious when it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain." Nielsen v. Rabin, 746 F.3d 58, 63 (2d Cir. 2014) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).

Where the claim concerns the inadequacy of treatment, as opposed to its complete denial, the seriousness inquiry is "narrower," Salahuddin, 467 F.3d at 280, and focuses on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract." Smith, 316 F.3d at 185. The Second Circuit has found that a delay in medical care constituted a constitutional violation in only limited circumstances, such as where officials deliberately delayed care as a form of punishment, see Archer v. Dutcher, 733 F.2d 14, 16–17 (2d Cir. 1984), where officials ignored a "life-threatening and fast-degenerating" condition for three days, see Liscio v. Warren, 901 F.2d 274, 277 (2d Cir. 1990) overruled on other grounds by Caiozzo v. Koreman, 581 F.3d 63 (2d Cir.

2009), and where officials delayed major surgery for over two years, see Hathaway v. Coughlin, 841 F.2d 48, 50–51 (2d Cir. 1988).

With respect to Farmer's subjective prong, a plaintiff must establish that "the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280. Therefore, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw such an inference.'" Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (citing Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). An "inadvertent failure to provide adequate medical care" does not constitute deliberate indifference. Estelle, 429 U.S. at 105–06. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim." Id. at 106.

### B. Plaintiff' Deliberate Indifference Claims

Plaintiff alleges that Defendants violated the Eighth Amendment by delaying treatment of his broken finger. His claims are grounded in his allegations that (1) Nurse Keane refused to treat his broken finger during sick hall on May 21, 2010, resulting in a three-day delay in his being seen by medical staff; (2) Dr. Williams failed to order X-rays of his finger during his medical appointment on May 24, 2010, resulting in, at most, a 28-day delay before a splint was applied; and (3) Dr. Williams did not increase his pain medication to specifically address the "serious pain" to his finger. (See Am. Compl. at 6–8.) Taken together, these allegations are insufficient to state a plausible deliberate indifference claim under the Eighth Amendment.

### 1. Plaintiff fails to allege facts showing that he suffered an objectively, sufficiently serious deprivation of medical care

Plaintiff does not allege facts showing that the alleged deprivation in medical care was "sufficiently serious," and he therefore fails to satisfy the objective prong of a deliberate indifference claim. Salahuddin, 467 F.3d at 280.

Although the Court is sympathetic to the difficulties Plaintiff faced in obtaining care for his broken finger, along with the swelling, decreased range of motion and "serious pain that accompanied it, this condition cannot support a failure-to-treat deliberate indifference claim. "Courts in this Circuit, as well as in other jurisdictions, consistently have found that a broken finger is not sufficiently serious as a matter of law." Colon v. City of New York, No. 08-CV-3142 (HB), 2009 WL 1424169, at *6 (S.D.N.Y. May 21, 2009) (collecting cases); Rivera v. S.N. Johnson, No. 95-CV-0845 (JTE), 1996 WL 549336, at *2 (W.D.N.Y. Sept. 20, 1996) ("A broken finger, without more, simply does not present a condition of urgency of the type that may produce death, degeneration or extreme pain which correspondingly merits constitutional protection.").[4] Indeed, Plaintiff recognizes as much in his opposition to Dr. William's motion. (See Pl. Opp'n at 7–8; see also id. at 50–52.)[5]

---

[4] The Court is only aware of one case in this Circuit where a broken finger was found to be sufficiently serious to state a claim. See Leacock v. New York City Health and Hosp. Corp., No. 03-CV-5440 (RMB) (GWG), 2005 WL 1027152 (S.D.N.Y. May 4, 2005). As Magistrate Judge Gorenstein was careful to note in Leacock, however, that case involved "involved an allegation that surgery was required due to the lack of proper initial treatment of an injured finger," which distinguished it from the earlier cases where surgery was not at issue. Id. at *4, n. 2. Plaintiff here makes no allegation that his condition warranted surgery, nor does he allege any other facts that suggest his condition is outside the realm of those considered in the earlier cases.

[5] Plaintiff nevertheless contends that the "serious pain" he experienced "should be deemed serious for Eighth Amendment purposes [pursuant] to Brock." (Pl. Opp'n at 50 (citing Brock, 315 F.3d at 162–63).) Brock concerned an inmate whose facial scar was alleged to be "a source of chronic pain that interfere[d] with his ability to conduct tasks associated with daily living." 315 F.3d at 163. While the plaintiff in Brock was denied any medical care whatsoever for his chronic pain, Plaintiff's allegations of continuing pain here arise in the context of a delay in receiving adequate medical care (see Pl. Opp'n at 9–10). As such, they are more appropriately considered under the rubric articulated in Smith, which is discussed below.

To the extent Plaintiff complains of a delay in receiving medical care, rather than a complete denial of medical care, he fails to satisfy the objective prong because he does not allege that he suffered any "particular risk of harm" due to the delay in receiving medical treatment. Smith, 316 F.3d at 186. In considering a delay-in-treatment claim, the Court must focus on the harm or risk of harm caused by the delay in treating his finger, rather than on the severity of the harm in itself. Id. Plaintiff does not allege nor do his medical records indicate that the delay in diagnosing and treating his broken finger exacerbated his medical condition, caused infection, or otherwise subjected him to an increased risk of harm. See id. at 187 (noting that "the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm").

The primary consequence that Plaintiff identifies as having resulted from the delay in diagnosing and treating his finger was the pain that accompanied his broken finger before he was discharged from physical therapy. (See Pl. Opp'n at 7.) These allegations are simply insufficient to support a deliberate indifference delay-in-treatment claim.[6] He does not allege, for example, that the delay substantially risked aggravating his existing condition. See Smith, 316 F.3d at 186–87 (noting that plaintiff may state an Eighth Amendment claim for the delay in treating "an otherwise insignificant wound … if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment," but will fail to state a claim "where the alleged lapses in treatment [of an admittedly serious medical condition] are minor and inconsequential").

---

[6] Furthermore, Plaintiff was not completely without pain relief during this time since he was on between 50 and 100 m.g. of pain medication. (Am. Compl. at 12.; see also Pl. Opp'n at 3, n. *.) Indeed, although his broken finger was not properly diagnosed until June 14 (Am. Compl. at 6–7 ¶¶ 25–27), his medication dosage was increased on May 24 (Pl. Opp'n at 3, n *).

9

Finally, to the extent that Plaintiff challenges the failure to alter his prescription for pain medication to specifically address the pain associated with his finger injury as opposed to the pain associated with his pre-existing back injury, this claim also fails. In cases challenging the decision regarding the type and quantity of pain medication, courts have repeatedly declined to find that a medical provider was deliberately indifferent to an inmate's medical needs. See Hill v. Curcione, 657 F.3d 116 (2d Cir. 2011) (holding that an inmate's claim that he needed stronger pain medication did not state a claim for deliberate indifference); Harris v. Westchester Cnty. Med. Ctr., No. 08-CV-1128 (RJH), 2011 WL 2637429, at * 3 (S.D.N.Y. July 6, 2011) (noting that the failure to provide stronger pain medication does not constitute deliberate indifference); Veloz v. New York, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004) ("Differences in opinion by a doctor and a prisoner over the appropriate medication to be prescribed is a disagreement over a treatment plan and does not implicate the Eighth Amendment."), aff'd, 178 F. App'x 39 (2d Cir. 2006); Fernandez v. Fed. Bureau of Prisons, No. 99-CV-4944 (VM), 2001 WL 913929, at *2–3 (S.D.N.Y. Aug. 13, 2001) (holding that plaintiff's claim that defendants "ignor[ed] his pleas for medical care for the pain he was experiencing; and [] fail[ed] to provide him with adequate pain medication" "cannot satisfy both prongs for establishing deliberate indifference to his medical needs").

In sum, Plaintiff fails to satisfy the objective prong of the deliberate indifference standard because he does not allege facts showing that he suffered from a "serious medical condition" or that he faced a serious risk of harm by the delay in diagnosing and treating his broken finger.

### 2. Plaintiff fails to allege facts showing that Defendants acted with a subjectively "culpable state of mind"

Plaintiff similarly fails to allege facts suggesting that Nurse Keane or Dr. Williams acted or failed to act with a "sufficiently culpable state of mind," and is thus also unable to satisfy the subjective prong of a deliberate indifference claim. See Farmer, 511 U.S. at 834.

Plaintiff alleges that Nurse Keane was "verbally rude" to him, and told him that "she can't do anything for [him], she'll put [him] down to see [his medical provider] and ordered him to leave." (Am. Compl. at 6 ¶ 11.) He further alleges that she "refused to look a[t] my lefthand middle finger [when] plaintiff tr[i]ed to show her the swelling and bone sticking up under the skin." (Id. ¶ 12.) Nurse Keane's inaction, Plaintiff claims, was "fueled by her feelings that plaintiff was a nuisance to her," which she exhibited by stating that "she just saw [him] the other day." (Pl. Opp'n at 52–53.) Her culpable state of mind, he asserts, is further demonstrated by her failure to note his May 21 clinic visit in his medical records. (Id. at 53.) These allegations, while portraying Nurse Keane as ill-mannered, if not insensitive, are insufficient to demonstrate that she was "aware of facts from which the inference could be drawn that a substantial risk of serious harm existed" as a result of Plaintiff's finger injury and that she "dr[e]w [such an] inference." See Hemmings, 134 F.3d at 108 (2d Cir. 1998).

At best, Plaintiff's allegations suggest that Nurse Keane turned him away from the clinic because she believed that he was a "nuisance" and that his injury was not serious. The law is clear, however, that misdiagnosis and "the decision not to treat based on an erroneous view that the condition is benign or trivial" do not constitute deliberate indifference to Plaintiff's serious medical needs. Harrison v. Barkley, 219 F.3d 132, 139 (2d Cir. 2000); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). What is missing from Plaintiff's allegations is some basis to suggest that Nurse Keane knew of and disregarded an excessive risk to his safety. For example, there is no suggestion that Nurse Keane "refused to verify underlying facts that [she] strongly suspected to be true, or declined to confirm inferences of risk that [she] strongly suspected to exist." Farmer, 511 U.S. at 843.

11

Plaintiff also fails to satisfy the subjective prong against Dr. Williams.  Plaintiff alleges that Dr. Williams delayed in providing him adequate medical care when she did not properly diagnose his broken finger, order an X-ray during his May 24 appointment, or increase his pain medication to adequately address the pain in his finger.  (See Am. Compl. at 7 ¶¶ 17–20.)  Plaintiff acknowledges, however, that Dr. Williams ordered X-rays the following month and, upon detecting that his finger was broken, applied a splint to his finger and referred him to physical therapy.  (See Am. Compl. at 7–8 ¶¶ 25–27.)  These allegations do not suggest that Dr. Williams was deliberately indifferent to Plaintiff' serious medical needs.

At their strongest, Plaintiff's allegations suggest that Dr. Williams negligently misdiagnosed his broken finger during his May 24 visit and that Plaintiff disagreed with the course of treatment that he received from Dr. Williams.[7]  Without more, as already noted, allegations of a negligent misdiagnosis do not satisfy the subjective requirement of the deliberate indifference analysis because they do not suggest that the defendant acted with a conscious disregard to inmate health or safety.  See Estelle, 429 U.S. at 106; Harris v. Westchester Cnty. Med. Ctr., No. 08-CV-1128 (RJH), 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) ("Allegations of … misdiagnosis do not state a cause of action under the Eighth Amendment.") (quotation marks and citation omitted).  Moreover, courts have consistently held that a disagreement over the course of medical treatment, such as the amount or type of pain medication prescribed, which often turns on issues of medical judgment, is insufficient to demonstrate that a defendant acted with a "sufficiently culpable state of mind" to support an Eighth Amendment claim.  See *supra* pp. 11–12.

---

[7] Indeed, Plaintiff quite clearly alleges that "Dr. Williams in fact carelessly misdiagnosed his broken finger and serious pain" and that "clearly her actions [were] not based on any well establishe[d] medical standards." (Pl. Opp'n at 10.)

Plaintiff also alleges that Dr. Williams demonstrated a "reckless culpable mental state" by failing to note his complaints regarding his finger in his May 24 medical record. (Pl. Opp'n at 11.) This is similarly insufficient to suggest that Dr. Williams "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280 (citing Farmer, 511 U.S. at 836–37). Even though it appears that Dr. Williams did not make any notations in his medical records, Plaintiff does not allege that she completely ignored his complaints about his finger. Rather, he alleges that she responded to his complaint by inquiring about his range of motion and conducting a visual inspection of his finger. (Am. Compl. at 7.) While Plaintiff may have hoped for a different course of treatment, "the essential test is one of medical necessity and not one simply of desirability." Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) (citing Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981)).

In sum, and without overlooking the difficulty that "intent is rarely susceptible to direct proof," Nielsen, 746 F.3d at 63 (quoting Hayden v. Paterson, 594 F.3d 150, 163 (2d Cir. 2010)), Plaintiff has failed to allege that either Nurse Keane or Dr. Williams acted with the requisite state of mind to satisfy the subjective prong of a deliberate indifference claim.

### IV.   CONCLUSION

Although the Court has been mindful to afford Plaintiff' complaint the liberal interpretation that it is due, Plaintiff nevertheless has failed to state a plausible Eighth Amendment claim against Nurse Keane or Dr. Williams because he does not allege facts showing that they were responsible for a "sufficiently serious deprivation of medical care," or that they "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280 (citing Farmer, 511 U.S. at 836-37). Accordingly, Defendants' motions to dismiss Plaintiff's

amended complaint are GRANTED.[8] In these circumstances, the Court finds it unnecessary to consider Defendants' arguments concerning qualified immunity.

Although, as a general rule, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal brackets and quotation marks omitted), "leave to amend a complaint may be denied when amendment would be futile." Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006) (citing Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003)). Here, Plaintiff has already amended his complaint once in response to Defendants' initial motion to dismiss (see Dkt. 46 & 50), and the Court has no basis to conclude that a further opportunity to amend would assist Plaintiff in stating a viable claim. Accordingly, the Court declines to grant leave to amend.

The Clerk of Court is respectfully directed to terminate the motions at Dkt. 59 and 61 and to close this case.

SO ORDERED.

Dated: February 11, 2015
      New York, New York

Ronnie Abrams
United States District Judge

---

[8] In his opposition to Nurse Keane's motion to dismiss, Plaintiff alleges that Nurse Keane violated his rights set forth in the "Patient's Bill of Rights" and the "Health Service Policy Manual" (Pl. Opp'n at 49.) To the extent that this can be construed as an assertion of state law claims against Nurse Keane, the Court declines to exercise supplemental jurisdiction over such claims. See Marcus v. AT & T Corp., et al., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where federal claims are dismissed before trial, the state claims should be dismissed as well.").